UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
"JOHN DOE," a fictitious name,                                   Docket No.

        Plaintiff,

                                                                ECF CASE
        -against-

                                                                **COMPLAINT**
JOHN FITZGERALD, HUDSON VALLEY
CHARTER SERVICE, INC., and JAMES ROES
1-25 (fictitious names),

        Defendants.
---------------------------------------------------------X


Plaintiff, **JOHN DOE**, a fictitious name, (hereinafter "Doe" or "Victim"), by his attorneys

GALLO VITUCCI KLAR LLP and LAW OFFICES OF THOMAS M GRASSO LLC, alleges for

his Complaint against defendants, upon information and belief as follows:


## INTRODUCTION

1.      This is a civil action for negligence seeking compensatory damages for personal

injury arising out of a hazing, sexual battery, and false imprisonment incident that occurred on a

chartered bus in September 2016.


## PARTIES

2.      Plaintiff-Victim, **JOHN DOE**, is and was at all relevant times a resident of the State

of West Virginia and was enrolled as a "Plebe" student member of the United States Merchant

Marine Academy, located in Kings Point, New York (hereinafter "USMMA" or "the Academy"),

Class of 2020, and a member of the USMMA Men's Soccer Team, from July to October 2016.

3.      Plaintiff brings this action on his own behalf and as agent and/or trustee on behalf of and for the interest of all parties who may be or become interested in the matters which are the subject of this case, as their respective interests may ultimately appear.

4.      Defendant, **JOHN FITZGERALD**, is and was at all relevant times a resident of the State of New York, and at all relevant times in 2016 the Associate Head Coach of the of the USMMA Men's Soccer Team when Plaintiff was enrolled.

5.      Defendant **HUDSON VALLEY CHARTER SERVICE, INC. ("HVCS")** is and was at all relevant times a New York corporation with a business office located at 6 Dogwood Road, Cortlandt Manor, NY 10567, and provides charter bus services to the Academy for sports team movements and for the Men's Soccer Team.

## **JURISDICTION**

6.      This Court has Diversity Jurisdiction pursuant to 28 U.S.C. §1332 because plaintiff and defendants are diverse in citizenship and the amount in controversy exceeds $75,000 exclusive of interest and costs, and 28 U.S. Code § 1367 (Supplemental Jurisdiction).

## **VENUE**

7.      Venue is proper in this Court because defendant **FITZGERALD** is a New York resident and resides in this District, defendant **HVCS** conducts business within this district, the performance of the charter contract between **HVCS** and USMMA commenced in this District, and plaintiff was a student at USMMA within this District.

## FACTS

### I.    Fitzgerald and Duties He Owed Plaintiff

8.    **FITZGERALD** was and is a duly licensed soccer coach and holds NSCAA Premier Diploma, NSCAA Director of Coaching Diploma, a USSF "B" coaching license, and is a National Staff Instructor for United Soccer Coaches (formerly NSCAA).

9.    In the 2015-2016 and 2016-2017 academic years, the Academy men's soccer team was entered with the National Collegiate Athletic Association (NCAA) as a Division III team and placed in the "Skyline Conference".

10.    John **FITZGERALD** was the Associate Head Coach of the Academy Men's Soccer Team for the Fall 2016 season, and had worked in that role approximately twenty years.

11.    **FITZGERALD**, as Associate Head Coach of the of the USMMA Men's Soccer Team, was bound to comply with all MARAD and Academy regulations and rules.

12.    **FITZGERALD** accepted financial compensation in excess of $500 in consideration for his coaching services provided to the Academy as Associate Head Coach of the of the USMMA Men's Soccer Team for the Fall 2016 season.

13.    The U.S. Merchant Marine Academy Alumni Association & Foundation, Inc. ("USMMA-AAF"), financially compensated **FITZGERALD** in excess of $500 in consideration for his coaching services to the Academy as Associate Head Coach of the of the USMMA Men's Soccer Team for the Fall 2016 season.

14.    **FITZGERALD** received and accepted in excess of $500 from the USMMA-AAF in association with **FITZGERALD's** participation in the USMMA Men's Soccer Team for the Fall 2016 season.

15.     In his role as Associate Head, Defendant, **FITZGERALD**, had duties and was responsible for, *inter alia*, supervision of the Men's Soccer Team members at all times during practice, on team movements on charter buses, and at competitive NCAA sanctioned matches; proper reporting to the Academy Athletic Department and the Commandant; ensuring compliance with NCAA standards and regulations; ensuring compliance by with all U.S. Department of Transportation, Maritime Administration, and Academy policies, regulations and Superintendent's Instructions.

16.     The Academy is a federal institution operated by the Maritime Administration ("MARAD"), which is an operating administration of the U.S. Department of Transportation. Under 46 U.S.C. § 51301, the Secretary of Transportation is authorized to maintain the Academy as an institution of higher education to prepare its students for service in the U.S. Merchant Marine, among other objectives. 46 U.S.C. § 51301(a). The Secretary of Transportation delegated authority to carry out its functions under this provision to the MARAD Administrator, 49 C.F.R. § 1.93, who, in turn, delegated direction and supervision of the Academy to the Academy's Superintendent.

17.     The Academy's operation and maintenance is governed by 46 U.S.C. § 51301 et seq. and regulations promulgated thereunder. Section 51318 establishes that the Superintendent is required to "prescribe a policy on sexual harassment, dating violence, domestic violence, sexual assault, and stalking applicable to the cadets and other personnel of the Academy." 46 U.S.C. § 51318(a).

18.     In the 2016-2017 academic year, the mission of the Academy was, "*To educate and graduate licensed merchant mariners and leaders of exemplary character who will serve America's marine transportation and defense needs in peace and war.*"

19.     In the 2016-2017 academic year, the Academy's Policy Regarding Discrimination and Harassment, including Sexual Harassment and, Sexual Assault, as represented in the 2016-2017 Course Catalogue, required Midshipmen to refrain from, discourage, not tolerate, and report incidents of Sexual Harassment and Sexual Assault.

20.     In the 2016-2017 academic year, the Academy's Policy Regarding Discrimination and Harassment, including Sexual Harassment and, Sexual Assault, as represented in the 2016-2017 Course Catalogue, provided as follows:

    a.  It is the policy of the U. S. Merchant Marine Academy to encourage the development and growth of all Midshipmen, faculty and staff in an environment that is free from discrimination and harassment, including sexual harassment and sexual assault. Discriminatory and harassing behavior creates a demeaning, intimidating, and hostile educational environment that undermines the basic principles of the Academy and, therefore, is not accepted or tolerated at our institution. **It is the responsibility of all Midshipmen, faculty and staff to refrain from such behavior, to discourage it wherever found and to promptly report any such behavior, as required in Superintendent Instruction 2016-02** (Sexual Assault, Dating Violence, Domestic Violence, Stalking, Prevention Education and Response Policy) and Superintendent's Instruction 2013-02 (Policy Against Discrimination and Harassment, Including Sexual Harassment, of Midshipman). (emphasis added)

    b.  The Academy is dedicated to training men and women as future officers in the merchant marine and Armed Forces who must uphold and perpetuate the traditions of an honorable profession. Inappropriate conduct is corrosive to the cohesiveness, morale and esprit de corps of a military organization or a ship's company. All incidents of discrimination, including sexual harassment and sexual assault will be investigated by the Academy or the appropriate investigative agency having jurisdiction of the incident. All involved will be treated with dignity, fairness and respect. Sexual assault victims will be provided with victim advocacy services. If a violation is found,

prompt and effective corrective action will be taken. The Academy provides training, education and awareness to minimize discrimination and harassment.

21.     In May 2016, Rear Admiral (RADM) JAMES A. HELIS, USMS, the Academy's Superintendent, promulgated Superintendent's Instruction 2016-02 (Sexual Assault, Dating Violence, Domestic Violence, Stalking, Prevention Education and Response Policy) ("SI-2016-02") pursuant to Congressional directive at 46 U.S.C. §51318.

22.     SI-2016-02 applied to **all** Academy personnel, including midshipmen, faculty, staff, and personnel of tenant agencies, whether Federal employees, military personnel or contract employees.

23.     SI-2016-02 provided:

4. Policy.  The Academy is deeply committed to fostering a safe campus where Midshipmen can thrive in an environment free of sexual assault, dating and domestic violence, and stalking. The Academy supports and nurtures a campus climate that allows Midshipmen, faculty, and staff to perform at their highest abilities while still being assured of their essential safety and well-being. **Every member of the Academy community is responsible for fostering mutual respect and refraining from conduct that violates this policy. Sexual assault, dating violence, domestic violence, stalking and any other form of violence are unacceptable and will not be tolerated.** (emphasis added)

24.     SI-2016-02 applied:

i)      Both on and off Academy grounds and during duty and non-duty hours; and

ii)     To working, living, and recreational environments including both at the Academy, off the Academy grounds, and at sea.

25.     SI-2016-02 defined "Sexual Assault" as follows:

a.   Sexual assault is a crime of violence defined as **intentional touching of a sexual nature against the will (by use of force, physical threat, or abuse of authority) or without the consent**

6

**of the victim.** The victim of sexual assault can be male or female and the perpetrator of the sexual assault can be of the same or opposite sex. Sexual assault includes, but is not limited to, the following: i) Unwanted kissing, groping, fondling, or other more aggressive physical acts, such as rape, nonconsensual sodomy (oral or anal sex), or attempts to commit these acts; ii) Sexual contact with someone whom you reasonably should have known was impaired and, thus unable to consent, due to the use of alcohol or drugs (including prescription medications); iii) Sexual contact with someone who is "passed out," sleeping, or otherwise incapacitated; iv) Sexual contact with someone who is unable to say "no" and/or change their mind due to the presence of coercion or intimidation; and v) Sexual contact with someone who is under the age of consent in the jurisdiction in which the sexual assault occurs. (emphasis added)

26.    SI-2016-2 mandated at subpart (n) (emphasis added):

a.    All **Academy Midshipmen Officers**, staff members, faculty members and contract employees or other employees **shall**:

i) **Adhere to the provisions of this policy at all times**.

ii) **Report incidents of sexual assault**, dating and domestic violence. and stalking to the SARC or VA on duty.

iii) **Respond** to allegations of sexual assault, dating and domestic violence, and stalking promptly and professionally.

27.    The National Collegiate Athletic Association (NCAA) policies applicable to all Division III athletic teams, including the Academy Men's Soccer Team and athletes, prohibited hazing, bullying, sexual harassment, sexual assault, and interpersonal violence within sports teams.

28.     The NCAA Constitution and Operating Bylaws imposed upon coaches certain duties and responsibilities including, *inter alia*, institutional control and responsibility, student-athlete well-being, sportsmanship and ethical conduct, and reporting and compliance.

29.     The NCAA promulgated policies and guidelines, including but not limited to the "Hazing Prevention Handbook," "Addressing Sexual Assault and Interpersonal Violence," and anti-hazing materials through the NCAA Sports Science Institute, to inform and provide awareness to NCAA sanctioned sports team coaches, including **FITZGERALD**, of the dangers of hazing on student-athletes,

30.     In September 2014, the White House and the NCAA launched the "Its On Us" campaign which encouraged peers and bystanders to create a campus environment that made sexual assault unacceptable, and to prevent sexual violence before it has a chance to happen, which the Academy adopted in April 2016 applicable to all Academy sports teams including the Men's Soccer Team.

31.     **FITZGERALD**, Associate Head Coach of the of the USMMA Men's Soccer Team, owed plaintiff several duties including, *inter alia*, duties to supervise both on field and during transport to matches; prevent and report conduct; provide a safe sport environment; sufficient supervision of athletes; warning athletes and their parents regarding the inherent risks involved in their specific sport; prevent sexual harassment by other athletes and coaching staff, as well as discrimination; report to the proper authorities in cases of abuse.

32.     **FITZGERALD**, as Associate Head Coach of the of the USMMA Men's Soccer Team, held a position of power, authority and trust over the team players, including plaintiff, due to the nature of his duties as Associate Head Coach of the of the USMMA Men's Soccer Team, was in a Special Relationship with plaintiff.

33.    **FITZGERALD** knew or should have known of all MARAD, Academy and NCAA policies and regulations regarding sexual assault and sexual harassment and the importance of maintaining an environment free of hazing, bullying, harassment, intimidation, sexual assault and sexual harassment.

## II.    Conduct Directed at Plaintiff up to September 2, 2016

34.    During the course of the Fall 2016 sports season, certain senior members of the Academy Men's Soccer Team hazed, teased, harassed, bullied, ridiculed and degraded plaintiff because of his home state, West Virginia, making sexually derogatory statements on a daily basis like, "*Hey ["Doe"] do you miss sleeping with your sister and Mom?,*" and harassed him because his family had been living in an RV due to a recent move, in the presence of the coaches including **FITZGERALD**.

35.    Plaintiff believed the harassment was going to stop the first month, but the longer it went on, the more often and more hateful the comments became causing plaintiff emotional distress.

36.    Plaintiff's soccer teammates hazed and ridiculed plaintiff in the presence of other team coaches, including **FITZGERALD**, and players with targeted, sexually offensive remarks and conduct, which spilled off the playing field and into the barracks.

37.    The hazing and harassment increased to a point where Plaintiff could not go to practice without his teammates making a sexually deviant comments, in the present of the coaches including **FITZGERALD**, about him and his family.

38.    **FITZGERALD** did nothing to stop or reduce hazing, bullying, harassment and abuse of Plaintiff during team practices, classes, in the barracks and everywhere. Unchecked by

**FITZGERALD**, the Men's Soccer Team hazing and harassment spread outside the team and into the entire Regiment of Midshipmen.

39.     Plaintiff began to hate to leave his room and even go to dinner for the emotional distress and anxiety of having to face more and escalating hazing, bullying, harassment and ridicule.

40.     Plaintiff was made anxious, miserable, depressed and emotionally distressed every day as a direct result of the continuous and escalating barrage of hazing, bulling, and harassment, and sexually charged abuse directed at him that **FITZGERALD** made effort to prevent or report.

41.     The hazing, harassment and abuse affected Plaintiff's time with the soccer team and adversely affected his academic studies and social life as well.

42.     Plaintiff became anxious, distracted, worried, and emotionally distress unable to keep his mind off what was going on as a direct result of the treatment he was receiving from the Men's Soccer teammates due to **FITZGERALD's** neglect.

43.     **FITZGERALD** knew or should have known that his negligent supervision of the Men's Soccer Team and his failure to prevent and report the team members' hazing, bullying, harassment and abuse of plaintiff violated MARAD, Academy, and NCAA policy and regulations.

44.     **FITZGERALD** took no action to prevent or report the hazing, bullying, harassment and abuse of plaintiff or render any assistance to plaintiff though required to do so.

45.     Plaintiff came to learn that the men's soccer team had a longstanding culture of hazing and abuse and feared for his own safety.

46.     Between July and August 2016, plaintiff was warned by midshipmen in First Company that "things happened" at the back of the bus on the team trips and that plebes were targeted for abusive treatment, and caused Plaintiff to fear for his own physical safety.

47.    Between July and August 2016, plaintiff was warned by upper classmen, "do not use the bathroom" on team bus trips because incidents of a sexually abusive nature would occur including attempts to penetrate plebe players' anuses by first classmen and, as a result plaintiff feared for his physical safety on soccer team bus trips that he may be attacked if he went to the back of the bus to use the bathroom.

48.    Plaintiff learned that first class members of the men's soccer team directed third classmen to stand up to "make a wall" on the team bus to block attacks by the first classmen on plebes from view of the coaches.

49.    **FITZGERALD** knew or should have known of the hazing culture, team bus trip conduct directed at plebes by senior team members.

50.    Overall, the Academy men's soccer team culture and environment was pervasively hostile and abusive, with hazing, bullying, humiliation, and subjugation of plebes to the lewd whims of first-class soccer players, encouraged, unchecked, and unreported by fellow teammate midshipmen and coaching staff in violation of duties imposed by NCAA, MARAD, and Academy policy and regulations, all of which directly resulted in plaintiff's severe emotional distress and anxiety and fear for his physical safety.

51.    The culture of harassment and abuse was well documented by the U.S. Department of Transportation, Office of Inspector General ("OIG") which had investigated claims of sexual harassment and sexual assault at the Academy and identified numerous instances and problems, reports of which were published publicly.

52.    In August 2018, the OIG issued Report of Investigation No. I17Z0020200 arising out of the conduct that is the subject of this lawsuit that identified at least seven (7) victims of sexual harassment and sexual assault within the Academy Men's Soccer Team, five (5) of which,

including plaintiff, who were victims of Class of 2016 seniors who were teammates of plaintiff who attacked him.  The OIG reported that, "The coaches knew about the hazing and teasing for years . . . ."

53.    **FITZGERALD** knew or should have known about the hazing and teasing of plebe by seniors on the Men's Soccer Team.

### III.    Sexual Battery of Plaintiff During Bus Trip to Baltimore, September 2, 2016

54.    On September 2, 2016, the Academy Men's Soccer Team embarked on a team bus trip to JOHNS HOPKINS UNIVERSITY to play in a tournament.

55.    The bus used for the trip was owned and operated by defendant **HVCS** pursuant to a charter agreement between the Academy and **HVCS**.

56.    Defendant **FITZGERALD** was present on board the team bus for this trip in his role as Associate Head Coach of the of the USMMA Men's Soccer Team.

57.    Plaintiff was on the bus and being yelled at by senior members of the Men's Soccer Team for almost anything. Plaintiff was placed in charge of movies on the bus and was repeatedly heckled and yelled at by first classmen, "*F\*\*\* you ["Doe"]! F\*\*\* you ["Doe"]!*" until the movie was put in.  **FITZGERALD**  and other coaches, and the **HVCS** bus driver, were seated at the front of the bus while this verbal berating directed at plaintiff occurred and within sight and hearing distance of the **FITZGERALD** and the **HVCS** driver.

58.    The usual seating arrangement had plaintiff seated with other plebes near the front of the bus in a row just behind the three coaches including **FITZGERALD**.  Third classmen were seated immediately behind the plebes, then second classmen behind them, and first classmen behind them at the back of the bus.

59.     A lavatory was located at the back of the bus.  In order to access the lavatory, one would need to walk through the seniors seated on both sides of the aisle.

60.     The mood on the bus during the trip was hostile due to the ongoing berating and hazing directed at plaintiff by senior members of the team.  **FITGERALD** and the **HVCS** driver knew or should have known of the conduct and circumstances on the bus.

61.     After a practice session while the bus was in the City of Baltimore, Maryland, enroute to a hotel, and while seated on the bus, Plaintiff was suddenly slapped in the face with a banana peel.

62.     Plaintiff removed the banana peel from his face and threw it behind him, accidentally hitting upper classman in the face.  Plaintiff apologized immediately and there was no problem with the upperclassman who was hit with the banana peel.

63.     Senior members of the team directed plaintiff to come the back of the bus to "have a talk."  Plaintiff complied, though fearing for his personal safety, sincerely believing that the senior team members, who included team captains and midshipmen officers, actually wanted to have a conversation and because he understood the instruction to be an order from a superior to which he had a duty to comply pursuant to the Midshipman Regulations.

64.     Immediately upon reaching them, senior team members forcibly and against plaintiff's will and without his consent, pushed plaintiff to the floor and held him down.

65.     While plaintiff was being forcibly restrained and held down on the floor, senior team members pulled Plaintiff's boxers and shorts to his ankles, exposing him naked on the bus floor in full view, against his will and without his consent.

66.     While senior team members forcibly held down and restrained plaintiff naked on the bus floor, senior team members forcibly applied penetrating pressure with a banana and their

fingers to plaintiff's anus, against plaintiff's will and without his consent.  **FITZGERALD** and the **HVCS** driver knew or should have known that this event was occurring.

67.    Senior men's soccer team members exerted great and substantial force and penetrating pressure with a banana and their fingers to plaintiff's anus causing him great and substantial pain, against Plaintiff's will and while he was restrained naked on the bus floor.

68.    Plaintiff felt great and substantial pain and penetrating pressure applied directly against his anus by the force of senior team member's unwanted attack with the banana.

69.    While being sexually battered, another senior team member poured a foul-smelling liquid, possibly urine, onto plaintiff or urinated onto plaintiff's head, while yelling, "*Plebe we told you to shave your pubes!*"

70.    During the sexual battery attack, plaintiff tried to get up and escape but was restrained and prevented from doing so by senior team members.

71.    After some time struggling, Plaintiff managed to break free of his attackers.  When Plaintiff attempted to return to his seat running past senior team members again tried shoving their fingers into plaintiff's anus as he ran by.

72.    The entire sexual battery attack occurred in full view and in close proximity to all **FITZGERALD** and the **HVCS** driver, who knew or should have known that Plaintiff was being attacked, yet none took any action to stop, prevent, interrupt, intervene or report the attack or render any aid to plaintiff.

73.    Later, senior team members told plaintiff this type of attack "*happens to every plebe.*"  This corroborated Plaintiff's fear from the story he heard earlier about things happening to plebes on the back of the team bus and not to use the toilets.  **FITZGERALD** and the **HVCS**

driver knew or should have known of this ritualistic abuse commonly perpetrated by senior team members against plebes on team bus trips.

74.    The attack on plaintiff subjected him to sexual battery & assault, false imprisonment, harassment, fear of physical attack and that he was in danger, intimidation, bullying, excessive and outrageous hazing, ridicule and embarrassment, substantial physical pain and severe anxiety and emotional distress and post-traumatic stress, all of which would not have occurred had **FITZGERALD** and the **HVCS** driver properly supervised the team members' conduct.

75.    When Plaintiff returned to his seat, other plebes appeared to know something had happened.

76.    Plaintiff was despondent and numb from the sexual battery attack and zoned out, placing his headphones on.  As soon as plaintiff got off the bus at the hotel, he was told how bad he smelled and was not spoken to by anyone.  The rest of the bus trip no one said anything to plaintiff about the attack.

### IV.    Following the Sexual Battery on Plaintiff

77.    Following the attack, Plaintiff was afraid to immediately report the incident due to fear of retribution, physical harm, and being ostracized.

78.    At the time, a "Sea Year Stand Down" had been imposed on the Academy by the U.S. Department of Transportation due to excessive incidents of sexual harassment and concern for the safety of midshipmen during their Sea Year.  Plaintiff believed that his report would prevent other midshipmen from shipping out for their required sea time, which would have further made him a target of abuse, harassment and retaliation.

79.     Plaintiff continued his academic studies upon returning to the Academy.  However, he suffered fear, depression, and anxiety in fear of further physical attack and potential retribution.

80.     To deal with this situation, plaintiff had to separate himself from his friends, quit the soccer team, and ultimately leave the school.

81.     Plaintiff got to the point where he hated going to classes because of the harassment and ridicule he would have to endure.  Having to see the upperclassmen who have sexually battered him caused him great emotional anxiety, fear, despair and misery.

82.     At least two other players also quit the men's soccer team after Plaintiff.

83.     After quitting the men's soccer team, plaintiff continued to be harassed around campus.

84.     After quitting the soccer team, plaintiff was visited by a senior member and captain of the Men's Soccer Team in his barracks room, and was questioned him about why he had quit, and what he was going to do about it, making plaintiff very uncomfortable conversation and worried about retribution and fearful of his safety.

85.     Plaintiff decided to "resign" from the Academy, after completing the first semester final exams, unable to continue in the face of the constant harassment and fear of further physical attack.

86.     On October 28, 2016, Plaintiff filed a "Restricted Report" along with a personal statement with Commander (CDR) PAUL ACQUARO, USMS.

87.     Under the Academy's Sexual Assault/Sexual Harassment ("SASH") Policy, 2016-02, a restricted report protects the identity of the victim.  Plaintiff did not want his name to be reported back to his attackers or the team for filing a report for fear of retribution.

88.     CDR ACQUARO accepted plaintiff's Restricted Report and personal statement and instructed plaintiff how to depart the school without being identified as reporting an incident or resigning.

89.     Plaintiff departed the Academy shortly thereafter.

90.     Plaintiff and his family received harassing messages through social media after he departed the Academy.

91.     Plaintiff suffered and continues to suffer post-traumatic stress and psychological and emotional distress including but not limited to anxiety, anguish, fear, severe depression, despair, hopelessness, sleeplessness, headaches, illness, severe mood swings and lashing out as a direct and proximate result of the extreme and outrageous conduct directed at him by all defendants during his first semester academic year 2016-2017.

## V.     Post Incident Proceedings

92.     The OIG investigated this incident and confirmed plaintiff's account of the facts and identified six (6) other similar incidents.

93.     The OIG found that there was a tradition of hazing, bullying and harassment in the men's soccer team that was common and accepted behavior.  The soccer coaching staff and defendants condoned it, passively and actively participated and perpetuated it, and did nothing to prevent it despite prohibitions in the Midshipman Regulations, Academy policies and NCAA anti-hazing rules and policy.

94.     This hazing, bullying and harassment behavior and conduct within the Academy Men's Soccer Team, and specifically the conduct and neglect of the coaches including **FITZGERALD**, violated MARAD, Academy and NCAA regulations and policy.

95.     The coaches, including **FITZGERALD**, had duties to supervise the team members at all times including but not limited to practices and team bus trips and prevent and report hazing bullying, harassment, and intimidation incidents, including but not limited to the incident occurring to plaintiff, to MARAD, the Academy, and NCAA regulations and policies.

96.     The coaches, including **FITZGERALD**, negligently and failed to supervise the men's soccer team members, prevent and report this hazing, harassment, bullying and intimidation behavior directed at plaintiff, and the sexual battery incident directed at plaintiff, to MARAD, the Academy and NCAA despite being aware of the affirmative obligation to do so pursuant to MARAD, Academy and NCAA policies, rules and regulations.

97.     The Academy' Superintendent, RADM HELIS, terminated the Academy men's soccer program and withdrew the Academy's entry for the 2017-2018 academic year as a result of the incident against Plaintiff.

98.     **FITZGERALD** and the other Men's Soccer Team coaches were relieved of their coaching duties and replaced as a direct result of the incident that occurred to plaintiff.

99.     In July 2017, the Academy brought formal administrative charges against seven senior Men's Soccer Team members, which were read in open court in the related cases, for various violations of the Academy Midshipmen Regulations and Academy policies for the incident directed at plaintiff on the team bus trip in Baltimore, Maryland, including:

      a.   Penetrating or attempted to penetrate the anus of another with a banana;

      b.   Bullying another by intimidating him through physical abuse and unreasonable verbal taunting;

      c.   Hazing by humiliation and physical act by forcibly restraining, squirting water and/or urine and by covering with food;

    d.   Hazing by creating an atmosphere of fear and intimidation among soccer team plebes who understood that they went to the first-class midshipman, quote, territory, unquote, territory in the back of the bus, that they would be subjected to humiliation by being forcibly restrained, squirted with water and/or urine and covered with food;

    e.   Hazing by impairing the liberty of soccer team plebes who were not permitted to relieve themselves in the restroom located in the first-class midshipman, quote, territory, unquote, in the back of the soccer team because without fear of physical or mental abuse;

    f.   Engaging in intimidation by creating a hostile atmosphere in which another was afraid to report this sexual assault on his person because of the continuing threat of reprisal;

    g.   Engaging in conduct which reflected discredit on the Academy and the regiment of midshipman.

100.    In the Fall of 2017, the charges against each of the defendants were adjudicated in formal separate Academy administrative proceedings.

101.    Upon information and belief, all defendants received some sort of sanction as a result of the administrative proceedings which none of them appealed.

102.    In November 2017, the defendants were administratively "graduated" from the Academy, and received their Bachelor of Science degrees and U.S. Coast Guard licenses.

103.    Upon information and belief, none of the defendants were offered commission in the U.S. Naval Reserve at the time of graduation.

104.    In 2018, the Academy reinstated the Academy men's soccer team and re-entered NCAA Division III competition in the Skyline Conference, but with a different Head Coach, ANDREW MCCARTHY.

## FIRST CAUSE OF ACTION:
## <u>NEGLIGENCE OF FITZGERALD</u>

105.     Plaintiff repeats, realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 104 herein above.

106.     **FITZGERALD** had various duties including, inter alia, to continuously monitor and supervise team members at all times during practice and in transport; to prevent hazing, harassment and abuse; to report hazing, harassment and abuse; and to prevent foreseeable harm from occurring to team members including plaintiff.

107.     **FITZGERALD** had numerous duties imposed upon him by MARAD, Academy, and NCAA rules, regulations, and policies including but not limited to the duties to continuously monitor and supervise soccer team members, prevent and report incidents hazing, harassment and abuse.

108.     **FITZGERALD** was in a special relationship with plaintiff by virtue of his position of power, authority and trust as Associate Head Coach of the Academy Men's Soccer Team, and owed plaintiff duties to continuously monitor and supervise team members at all times during practice and in transport; to prevent hazing, harassment and abuse; to report hazing, harassment and abuse; to prevent foreseeable harm from occurring to team members including plaintiff; and to comply with all MARAD, Academy and NCAA rules, regulations and polices for the prevention of foreseeable harm against soccer team members including plaintiff.

109.     **FITZGERALD** had actual and/or constructive notice of dangerous conduct perpetrated by senior members of the Academy Men's Soccer Team toward plebes.

110.    **FITZGERALD** knew or should have known of the hazing culture and conduct of the senior team members directed toward plebes and foreseen the risks of personal injury that the culture and conduct posed, and was in a position to prevent it and/or to intervene to stop it.

111.    **FITZGERALD** breached his duties owed to plaintiff by, *inter alia*, negligently failing to adequately supervise the senior Men's Soccer Team members in practices and on the bus trip to Maryland and prevent the hazing, harassment and abuse directed at plaintiff; failing to intervene to stop the hazing, harassment and abuse directed at plaintiff; failing to prevent or intervene in the sexual battery against plaintiff on the bus trip to Maryland; failing to report the hazing, harassment, abuse and sexual battery against plaintiff; failing to comply with all MARAD, Academy and NCAA rules, regulations and policies governing hazing, harassment and abuse.

112.    Plaintiff suffered great and substantial physical pain, personal injury, psychological and emotional and traumatic distress as a direct and proximate result of FITZGERALD's breach of duties

113.    Plaintiff's personal injuries were directly and proximately caused by **FITZGERALD's** negligence and breach of duties.

114.    WHEREFORE plaintiff demands judgment in his favor and against **FITZGERALD,** jointly and severally, in the amount of $1,000,000.00 in compensatory damages, , plus prejudgment interest at the New York Statutory interest rate of 9% per annum, costs, attorney fees, and such other and further relief as this Court deems just and proper.

### SECOND CAUSE OF ACTION:
### <u>NEGLIGENCE OF HVCS</u>

115.    Plaintiff repeats, realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 114 herein above.

116.    **HVCS** had actual and/or constructive notice of the dangerous conduct traditionally perpetrated by members of the Academy Men's Soccer Team against plebes during team bus trips.

117.    **HVCS** knew or should have known of the tradition of hazing, teasing and abusing plebes by members of the Academy Men's Soccer Team on team bus trips and the risk of harm to passengers the conduct posed.

118.    **HVCS** owed plaintiff a duty to supervise and control the passengers on the bus during the trip to Maryland and to prevent harm to other passengers.

119.    **HVCS** owed plaintiff a duty to intervene in and stop hazing, harassment and abuse, and the sexual battery attack that occurred on the team bus trip to Maryland.

120.    **HVCS** breached its duties to plaintiff by failing to supervise and control the bus passengers to prevent or intervene in sexual battery and forcible restraint perpetrated on plaintiff by members of the Academy Men's Soccer Team; and in failing to intervene in the attack on plaintiff to prevent harm.

121.    Plaintiff suffered great and substantial physical pain, personal injury, psychological and emotional and traumatic distress as a direct and proximate result of **HVCS's** breach of duties

122.    Plaintiff's personal injuries were directly and proximately caused by **HVCS's** negligence and breach of duties.


**WHEREFORE** plaintiff demands judgment in his favor and against **HVCS,** jointly and severally, in the amount of $1,000,000.00 in compensatory damages, plus prejudgment interest at the New York Statutory interest rate of 9% per annum, costs, attorney fees, and such other and further relief as this Court deems just and proper.

Dated:  Woodbury, New York
        August 27, 2019

Attorneys for Plaintiff

By:  _____

Richard González, Esq. (RG9291)
**Gallo Vitucci Klar LLP**
100 Crossways Park West, Suite 305
Woodbury, NY 11797
Tel: 212-683-7100
Fax: 516-226-1525
Email: rgonzalez@gvlaw.com
www.gvlaw.com

Dated:  August 27, 2019

Attorneys for Plaintiff

By:  _____/s/_____

Thomas M. Grasso, Esq. (TG3737)
**Law Offices of Thomas M Grasso LLC**
8 Willow Street
Cranford, New Jersey 07016-1855
Tel: 908-514-8850
Email: tom@tmgrassolaw.com

Of Counsel:  David E. Schneider, Esq.